TALIAFERRO, Judge.
On or about April 24, 1947, plaintiff, by oral agreement leased to the defendant a drilling rig with equipment. At the time defendant held what is referred to in the record as the “Blackie Snyder Lease” that embraced lands near Elm Grove in Bossier Parish, Louisiana. The lease, unless drilling operations were begun not later than May 1st, would expire for non-user; hence,, defendant, a non-resident of Louisiana, was extremely anxious to have possession of the rig, etc. and locate them upon the leased land,prior to that date.
Plaintiff contends that the price of the lease was $500.00 per month, while defendant contends that the $500.00 he paid plaintiff about the time of delivery of the rig covered the use thereof while' drilling the well on said lease, regardless of the time required to make a producer or bring in a dry hole, at a depth of 1,550 feet.
• This suit is for $1,625.00, being for rental on the rig for the months of June,. July, August and part of September, 1947; for $100.00, the value of lumber allegedly used and/or removed by defendant, and for $100.00 for use of tractor, plow and slip for digging a slush pit.
In a supplemental petition, in the alternative, plaintiff sued for $500.00 per month rental for the rig, etc., on quantum meruit basis. He sued out a writ of sequestration under which the rig, etc. were seized by the sheriff, and a writ of attachment, under which some lumber, tubing, casing and a derrick of defendant were seized, as in rem.
Defendant submitted himself to the jurisdiction of the Court by unreservedly an *407 swering - the petition. He denies owing plaintiff any amount and reconvenes for $4,367.98, embracing some sixteen different claims of indebtedness arising from the use, possession and operation of the leased property. These claims consist of charges for labor, repairs, parts, management and administrative expense.
There was judgment for plaintiff for $1,250.00, with recognition of the writ of sequestration. Nothing is said therein concerning the writ of attachment. The re-conventional demand was rejected in toto.
Defendant appealed to this Court. The appeal has been answered by appellee wherein increase to $1,725.00 in the amount of the judgment is asked.
On the main question of fact, viz.: for what period of rent the $500.00 paid, the trial judge found for the plaintiff. We here quote from his reasons for judgment on this issue, to-wk:
“The evidence is so conflicting as to the rental to be paid for the rig that there is no way to reconcile it: In this situation the .only thing that can be done is to accept the most reasonable side, which appears to be that of plaintiff. It appears that all parties expected the well to be completed in 30 days. Defendant was in a hurry to get drilling operations commenced in order to save the lease. He had a lease on only a half interest, and expected to get the other half when he started drilling, but was unable to do so, and after 108 feet of surface casing was set the operation was shut down for some 60 days while trying to get the lease.
“It is unreasonable to believe that plaintiff had any intention to allow the rig to set idle on the lease while defendant negotiated for the half interest in the lease. It is true that the well was near the line of plaintiff’s property and a producing well would have benefitted him, but hardly enough to offset the rental value of the rig, for four months.”
In addition to the delay incurred while efforts were being made to acquire the lease mentioned, nearly a half month was lost while the- rig and equipment were under seizure by defendant’s laborers; and a further delay was encountered for lack of adequate water supply when actual drilling operations were begun. This handicap was overcome by laying a mile of pipe to a lake.
This suit was filed on September 4, 1947, or practically four months after the lease agreement was entered into. When we add the time consumed in getting the lease difficulty ironed, out, that involved while the rig was under seizure,, and that incurred on account of lack of water, we have at least three months. By deduction it appears clear that the .well, only 1,550 feet deep, was drilled in about thirty days, the time in which all believed it could be drilled. But it is unthinkable that plaintiff intended for his rig to be thus tied up for the relatively small rental of $500.00. Especially would this seem absurd when we consider the fact, well established by the record, that during this period he had opportunity to lease the rig and equipment for a period of twelve months .at $500.00 per month. This opportunity was lost because of defendant’s possession of the property.
The decided preponderance of the testimony sustains the contention that it was thought and contemplated by all concerned, that the well could be drilled by this rig to a depth of 1,550 feet within thirty days.
Plaintiff has proven -the rental value of the rig and equipment to be $500.00 per month, and he is entitled to recover on this basis, whether on the alleged contract or on quantum meruit.
When defendant sought to introduce evidence to support his «conventional demand, plaintiff objected on the ground that the claims, as described and alleged, upon, were too vague and indefinite to admit proof in support of them. The objection was sustained as to all items save Nos. 9, 10 and 14. They are as follows:
“(9) Rental — of drill pipe — 611.2’ of 3" — 22’ length @ 35‡ per ft., said drill pipe was to have been furnished by P. E. Cain under the rental agreement, but which he failed and neglected to furnish . $213.92
*408 ' “(10) Trucking — drill . pipe — set forth hereinabove No. (9) . $33.-99 .
“(14) Rental — of light plant, which P. E. Cain was obligated to furnish and which he failed to furnish. 75.00”
Items 9 and 10 may be considered and disposed of as one. It is defendant’s contention that it was the plaintiff’s obligation to furnish drill pipe sufficient to encase the well from bottom to top, or 1,550 feet, and that he supplied him with only about1,000 feet; and because of this he was compelled to acquire 611 feet of this pipe, but plaintiff seriously challenges this position. He contends that there is no definite rule or custom that requires the lessor to supply pipe for the entire depth of the well; and, in addition, that plaintiff’s agent and representative (who also had an interest in the lease and in seeing that it was preserved intact by starting the well prior to May 1st) looked over the rig, the pipe and other equipment on the ground and it was on his O. K. that the lease was closed. The lower Court took this view of •the matter and held that defendant was not entitled to recover in this item. There is no manifest error in this ruling.
As to item 14, the record does disclose that plaintiff suggested to defendant’s agent that they tie ’on to his own. elecric high line for current necessary for lighting purposes, but the suggestion was not availed of. To have done so would have' saved the cost of renting a plant. In view of this situation, as held by the trial judge, 'it would not be fair to charge defendant with this rent.
As regards the other 13 item's of the re-conventional demand, it is clear that they all have as their' basis the alleged failure of the rig to function as expected by defendant and as he says was guaranteed by the plaintiff.
The rig was an old one. Defendant was well acquainted with' it and so was his referred to agent who once owned it. A short time prior to the lease agreement involved herein, an oil well, at shallow depth, had' been brought in by the employment of this- rig. The lessee of the rig, who owned this well, spent approximately $1,000.00 in repairs to and replacements for it. These,, it was certain, put the rig in first rate working condition, all things ’ considered. At time of trial, April 1949, the rig was being used in the El Dorado oil field. No one could reasonably expect it to have operated as efficiently and be as dependable as a new one. We are certain plaintiff did not warrant it free of possibility of breaking down.
Defendant, as said before, was, as a witness stated, “in a tight”; His mineral lease had but a few days to run to expire. It was not long after the war had ceased and! oil drilling activities had taken on extensive proportions. Drilling rigs were not plentiful. Defendant was very glad and fortunate to lease this one at the time and where then located, it not being far from the Snyder lease.
The testimony does not support the contention that the rig did break down and cease to function for several days ‘ at different times. The fact that the well w’as completed by' actual operational time nearly as quickly as originally hoped'and contemplated speaks well of the rig’s general' physical condition. Another circumstance that has some significance is this: After defendant and his agent examined the rig they decided that it needed repairs that would cost only $40.00. Plaintiff agreed to stand this expense. Accordingly, this, amount was deducted from the rent and payment of $460.00 by check made to plaintiff) instead of $500.00.
After the rig was sequestered, defendant thought well enough of its drilling qualities to bond it and hold possession thereof for nearly sixty days. If its condition were so faulty as claimed, it is strange that defendant would have desired to hold and use it after it was seized. .
■Plaintiff has abandoned the claim 'of $100.00 for lumber removed. The charge for use of machinery to dig the slush pit has not been 'supported by adequate proof. It was denied below and we think properly.
We do not know, as his written reasons for judgment do not explain, why the trial 'judge gave judgment for $1,250.00, equivalent to'two and one-half months rent at $500.00. He says that in his opinion *409 this award “will do substantial justice.” Defendant had possession of the rig and •equipment approximately five months, on which account he had paid only $500.00. Plaintiff seeks to recover only additional rental for three and one-quarter months, ■or $1,625.00. We perceive of no good reason why he is not entitled to judgment for this amount.
For the reasons h.erein assigned, the judgment from which appealed, is amended by increasing the amount thereof to Sixteen Hundred Twenty-Five ($1,625.00) Dollars, and, as thus amended, it is affirmed with costs.
KENNON, J., dissents, giving written reasons.